IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 13-00433-01-CR-W-BP |
| ERIC E. DAVISON, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION TO DENY DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Before the court is Defendant's motion to suppress evidence. Defendant moves the Court to suppress all evidence obtained from the investigatory stop and subsequent search conducted on November 25, 2013, on grounds of a Fourth Amendment violation. For the following reasons, Defendant's motion should be denied.

## *I. BACKGROUND*

An indictment was returned on December 11, 2013, charging Defendant with one count of being a felon in possession of a firearm and one count of being a felon in possession of ammunition. On March 19, 2014, Defendant filed a motion to suppress evidence (Doc. No. 19). The government responded on March 26, 2014 (Doc. No. 23). An evidentiary hearing was held on April 14, 2014. The government appeared by Assistant United States Attorney William Meiners. Defendant was present, represented by appointed counsel Travis Poindexter. The government called Kansas City, Missouri Police Department Officer Chad Pickens to testify. The following exhibits were admitted into evidence:

1

  Government's Exhibit 1:  Dash Cam video from November 25, 2013
             (4814@20131125132230)

  Defendant's Exhibit 11:  Aerial Map
  Defendant's Exhibit 13:  Photograph of rear of 627 Forest Avenue, Kansas City, MO
  Defendant's Exhibit 16:  Patrol Video Clip and Map Sync of Route

## II. EVIDENCE

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact.

1. On November 25, 2013, the owners of a novelty store located at 9th and Tracy in Kansas City, Missouri, called 911 to report that a pickup truck had pulled into their back gravel lot, turned "donuts" and then drove away (Tr. at 4). One of the owners stated they observed the driver and an occupant exit the parked truck and walk northbound on Tracy (Tr. at 4).

2. Dispatch ran the license plate of the truck, discovered it was stolen and replayed the information over the air (Tr. at 4, 39).

3. Kansas City, Missouri Police Officer Chad Pickens was in the area at a homicide investigation (Tr. at 4). When he left the homicide investigation, Officer Pickens drove to the area where the stolen truck was parked and began conducting surveillance to see if the two occupants would return (Tr. at 5, 18-19, 41; Gvt. Exh. 1 & Def. Exh. 16 at 1:23:09 p.m.).

4. While conducting surveillance, Officer Pickens called the owner of the store who had initially placed the 911 call (Tr. at 5, 19). Officer Pickens learned that the occupants of the truck were a white female in a dark coat and a white or Hispanic male (Tr. at 5). Officer Pickens decided to drive around the area to see if he saw anyone matching this description (Tr. at 5-6, 19, 21).

5. Officer Pickens observed two people approaching 8th Street and Tracy who matched the

2

description (Tr. at 6, 8, 21, 41, 48; Gvt. Exh. 1 & Def. Exh. 16 at 1:23:56 p.m.). Upon seeing Officer Pickens, the individuals looked away, avoided eye contact and changed their route (Tr. at 8, 12, 21-22, 23, 42). This heightened Officer Pickens' suspicions but, because the description given of the individuals was limited, Officer Pickens continued to canvas the area for any other individuals matching the description (Tr. at 6-8, 23).

6. Officer Pickens drove past Hope Faith Ministries and observed a large number of people congregating outside, none of whom match the description of the individuals for whom they were looking (Tr. at 23-24; Gvt. Exh. 1 & Def. Exh. 16 at 1:24:24 p.m.).

7. Officer Pickens next observed the individuals who had exited the stolen truck walking northbound on Forest from 8th Street (Tr. at 9, 25; Gvt. Exh. 1 & Def. Exh. 16 at 1:25:29). Officer Pickens contemplated stopping the individuals to ask why they were walking in a circle, but decided to develop more suspicion (Tr. at 9).

8. Officer Pickens drove around the block twice and felt certain the individuals knew they were being watched (Tr. at 10). He noted the individuals did not stop or break stride; a couple of times they looked up to determine law enforcement location then looked away quickly, but otherwise avoided eye contact (Tr. at 12, 26). Officer Pickens pulled into an alleyway and observed the individuals walking through the yard of a private residence (Tr. at 10, 28, 44-45; Gvt. Exh. 1 & Def. Exh. 16 at 1:27:33 p.m.). Officer Pickens knew the residence to be a drug house (Tr. at 11).

9. The individuals' body language appeared deflated, as if they knew they were going to be stopped (Tr. at 13). Officer Pickens believed they were trying to avoid police contact, so decided to stop them and inquire why they were in the area (Tr. at 10-11). The individuals did not attempt to run or flee (Tr. at 54, 57, 59-60).

3

10. The individuals walked to the patrol vehicle (Tr. at 13). They generally matched the description given of the individuals who had been seen exiting the stolen vehicle (Tr. at 16, 28). Additionally, it was statistically uncommon to see two white individuals or Hispanic and white individuals in this particular neighborhood (Tr. at 16).

11. Officer Pickens never observed the individuals within a block of the novelty store or the stolen vehicle (Tr. at 42, 46-47).

12. Given the high-crime nature of the area, Officer Pickens conducted a frisk of the male individual for officer safety (Tr. at 13, 47; Gvt. Exh. 1 at 1:27:52 p.m.). He immediately felt a metal object consistent with a firearm in the breast pocket of Defendant's coat (Tr. at 14, 15).

13. Defendant spontaneously uttered, "I'm so stupid." (Tr. at 14, 29, 30, 61-62). Based on this utterance, Officer Pickens asked Defendant if he was a felon to which Defendant responded, "Yes." (Tr. at 14, 30). Officer Pickens placed Defendant in handcuffs and arrested Defendant for being a felon in possession of a firearm (Tr. at 14).

14. Defendant stated he had been convicted in a murder case and had been released from prison four months earlier (Tr. at 14).

15. Officer Pickens repositioned Defendant in front of the patrol vehicle and searched Defendant incident to his arrest (Tr. at 14-15; Gvt. Exh. 1 at 1:29:53 p.m.). Officer Pickens pulled the gun from Defendant's pocket and attempted to make it safe (Tr. at 15; Gvt. Exh. 1 at 1:30:33 p.m.). In doing so, he discovered it was loaded with six live rounds (Tr. at 15). Officer Pickens continued to search Defendant and located a small box of ammunition from the same breast pocket of Defendant's coat (Gvt. Exh. 1 at 1:32:29 p.m.) and a baggie containing methamphetamine in Defendant's pant pocket (Tr. at 15, 32-33; Gvt. Exh. 1 at 1:34:19 p.m.). Defendant stated the ammunition was not his and that he had found it on the side of the street

(Tr. at 32). Officer Pickens also found a syringe filled with a clear fluid in Defendant's front pant pocket (Tr. at 33; Gvt. Exh. 1 at 1:33:00 p.m.).

## III. LEGAL ANALYSIS

Defendant maintains Officer Pickens lacked reasonable suspicion to conduct an investigatory stop. Based on this alleged illegality, Defendant argues that the evidence found as a direct result of the stop, as well as that found subsequently, should be suppressed. I disagree.

To make an investigative stop, officers must have reasonable suspicion that criminal activity is afoot; the reasonable suspicion must be based upon specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. Terry v. Ohio, 392 U.S. 1, 25-30 (1968). The existence of reasonable suspicion is determined from the totality of the circumstances in light of the officers' experience. United States v. Sokolow, 490 U.S. 1, 7-10 (1989); United States v. Cortez, 449 U.S. 411, 418 (1981).

The principal components of a determination of reasonable suspicion will be the events which occurred leading up to the stop, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion. Ornelas v. United States, 517 U.S. 690, 696 (1996). "A police officer views the facts through the lens of his police experience and expertise. The background facts provide a context for the historical facts, and when seen together yield inferences that deserve deference." Id. at 699. Therefore, the facts must be viewed in light of the officer's experience and familiarity with criminal activity. United States v. Johnson, 64 F.3d 1120, 1124 (8th Cir. 1995). "Even innocent actions may give rise to reasonable suspicion if they warrant consideration under the totality of the circumstances." Id. See also United States v. Bailey, 417 F.3d 873, 877 (8th Cir. 2005)(presence in a high crime area, plus officer's observation of suspicious behavior,

creates reasonable suspicion for a Terry stop). One fact that officers may consider is an individual's behavior once becoming aware of law enforcement presence. United States v. Dawdy, 46 F.3d 1427, 1429 (8th Cir. 1995).

In this case, Officer Pickens knew that a white female in a dark coat and a white or Hispanic male had been seen exiting a stolen truck in a high crime area. He canvassed the neighborhood, looking for these individuals. While doing so, he only observed two people who matched this description. Officer Pickens' suspicions were heightened when they did not make eye contact, changed their route upon seeing him, appeared to be walking in a circle and walked through the yard of a known drug house. As the individuals approached his patrol vehicle, Officer Pickens observed their body language to appear deflated -- as if they knew they were going to be stopped. The totality of these circumstances constitute reasonable suspicion for a Terry stop.

Once Officer Pickens stopped Defendant, he was entitled to conduct a frisk for officer safety. The Supreme Court has long allowed de minimus intrusions of the liberty of a person detained by a Terry stop to advance officer safety, such as a frisk for weapons. Terry, 392 U.S. at 27. When Officer Pickens detected a metal object that felt like a firearm in Defendant's coat pocket, Defendant spontaneously uttered "I'm so stupid" and told Officer Pickens that he was a felon. Defendant was then arrested for being a felon in possession of a firearm.

Pursuant to Defendant's arrest, Officer Pickens recovered the firearm from Defendant's coat pocket. He also located ammunition in the same coat pocket as well as a baggie containing methamphetamine and a syringe from Defendant's pant pockets. These searches do not violate the Fourth Amendment. See United States v. Robinson, 414 U.S. 218, 235 (1973)(stating a search of the arrestee's person incident to arrest "requires no additional justification.").

Accordingly, Defendant's motion to suppress should be denied.

## IV. CONCLUSION

For the above-stated reasons, it is

RECOMMENDED that the Court, after making an independent review of the record and the applicable law, enter an order denying Defendant's motion to suppress.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has fourteen days from the date of this report and recommendation to file and serve specific objections to the same, unless an extension of time for good cause is obtained. Failure to file and serve timely specific objections may result in waiver of the right to appeal factual findings made in the report and recommendation which are accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
May 6, 2014